## 28064. CAGLE'S, INC. v. CITY OF ATLANTA.

INGRAM, Justice. This appeal arises from the grant of summary judgments, in the Superior Court of Fulton County, in favor of the appellees against the appellant in an "offal" injunction case.

Cagle's, Inc., is a processor of chickens for sale and has a plant in the City of Atlanta next door to a plant of Allied Foods, Inc. (formerly Fabro, Inc.), a manufacturer of dog and cat food. A portion of the water purchased by Cagle's from the City of Atlanta is used in its processing plant for bird washing, hand washing by its workers along the eviscerating line for the bird chilling system in the plant. After such use, this fluid moves by gravity in a flume from Cagle's plant to the plant of Allied Foods, Inc. Upon leaving Cagle's plant, the fluid contains offal (leftover raw materials of chickens) and waste, as well as other by-products of the chicken processing, in addition to water. Upon arrival at the Allied Plant, the majority of the solid particles of offal are filtered out of the waste fluid and used by Allied in its manufacture of dog and cat food. The waste water is then discharged into the City of Atlanta sewer system through the sewer connection of Allied Foods, Inc.

The relationship between Cagle's and Allied began in 1958 under a written contract by which Cagle's agreed to sell its offal to Allied for use in producing dog and cat food. This offal sale continued and existed in November, 1966, when the City of Atlanta instituted a sewer service charge and industrial waste surcharge for the discharge of waste water into the city's sewerage system. Cagle's requested the city to bill Allied for these charges and for several years Allied paid them. In February, 1972, Allied sought a hearing before the City of Atlanta Public Works Committee on the question of its liability for the charges. The Committee concluded that Cagle's, rather than Allied, should be billed for this waste water discharge

obtained by Allied through the flume from Cagle's. This prompted Cagle's to file suit against the City of Atlanta seeking to enjoin it from collecting the sewer service charge. With consent of the parties, Allied intervened in the case and filed, with its motion, an answer and counterclaim to require Cagle's to reimburse it for sewer service charges previously paid by it to the City of Atlanta. Counsel for these parties later agreed by stipulation, however, that any question of private contractual liability between Cagle's and Allied for the sewer service charge and industrial waste surcharge would not be placed in issue for the trial court's determination, and Allied's counterclaim was subsequently deleted in further amended pleadings. On motions for summary judgment, the trial court held that Cagle's was responsible for the sewer service charge. It also decided the ordinances of the City of Atlanta here involved are not unconstitutional for vagueness and indefiniteness and that enforcement of the ordinances against Cagle's does not violate due process or equal protection of the law.

The relevant ordinances of the City of Atlanta are as follows:
"Sec. 33-58. Definitions.

Unless the context specifically indicates otherwise, the meaning of terms used in this division shall be as follows:

(ii) "Sewer service charge" shall mean the charge assessed against the sewer customers in the 'city' *that are connected to, or have access to,* the City of Atlanta Sewerage System.

(kk) *"Metered water" shall mean the amount of water consumed by the sewer customer in the 'city,'* as measured by a City of Atlanta 'water meter,' or other approved metering device."
"Sec. 33-59.

(c) *Determination of amounts.* For the purposes provided in subsection (b) hereof, there is hereby charged and assessed to *each premise or facility served by connection with the sewerage system of said city, or otherwise discharging sewage,* industrial wastes, water or other liquids, *either directly or indirectly* into the sewerage system, a sewer service charge and assessment payable as hereinafter provided, and in the amount determinable as follows:

(1) The *said sewer service charge shall be based upon the quantity of water used by the said premise or facility therein or thereon as the same is measured by a water meter or meters there in use,* or as otherwise currently established.

(2) Said sewer service charge shall consist of a charge of $.36

per hundred cubic foot of water consumed, including adjustments thereto.

(3) Water used from private sources shall be metered as required in subsection (d) of this division and will be figured at prevailing city water rates and the sewer service charges shall be billed accordingly." (Emphasis supplied.)

Section 33-60 of the ordinance defines "Industrial Waste Surcharges" as follows:

"(a) *Established. All persons discharging industrial wastes into the public sewers shall be charged and assessed a surcharge,* in addition to any sewer service charges, if these wastes have a concentration greater than the following 'normal' concentrations:

'(1) A five-day, 20 degree centigrade biochemical oxygen demand (BOD) of 250 parts per million as determined by laboratory analysis in accordance with 'standard methods'; or

'(2) Suspended solids content of 250 parts per million. The amount of surcharge, which is hereby charged and assessed against all persons discharging industrial wastes into the public sewers, shall reflect the cost incurred by the city in handling the excess biochemical oxygen demand (BOD) and suspended solids. This surcharge shall include a proportionate share of the following: Fixed charges for maintenance and operation of the sewerage system to include sewers, plants, pumping stations and other necessary appurtenances including depreciation and other incidental expense.' " (Emphasis supplied.) (R. 80).

Appellant Cagle's argues that these ordinances "make it patently clear that the sewer service charges are assessed against the 'sewer customer' which actually discharges the waste into the sewer system regardless of the source thereof, and that the sewer service charge shall be based upon the amount of waste which is actually discharged into the sewer system." Cagle's also argues, with respect to the industrial surcharge, that since it loses control of the waste after it passes into the flume, Allied could control whether under the ordinance Cagle's would have to pay the surcharge, depending on whether Allied chose to discharge or not discharge industrial waste subject to the surcharge. Appellees, on the other hand, contend that Cagle's is indirectly discharging its waste water into the city's sewerage system and that under the city's ordinance the customer who is obligated to pay the sewer service charge is also liable for any industrial waste surcharge.

Upon these facts, we must decide if the trial court correctly determined that Cagle's is responsible for the sewer service charge and industrial waste surcharge under the city's ordinances, and, if so, whether the ordinances are constitutional as written and enforced in this case.

It cannot seriously be questioned that the ordinances of the City of Atlanta constitute a valid exercise of the city's police power. The city is required by state law in operating its sewerage system to treat waste introduced into the sewer system in a manner which insures that the fluid returned to the public streams will be "water" rather than "waste." The city has a right to require, through a system of fair and reasonable rates, that its sewerage customers bear the expense of treating waste water. It is fundamentally fair to place the financial burden of operating water pollution control plants on those who pollute the water. The ordinances of the City of Atlanta are written to accomplish this valid public purpose.

The ordinances are sufficiently definite and free of vagueness to withstand the constitutional attacks made on them as written. As we view them, the charge imposed is placed upon the person or company who actually brings about the waste and who discharges it, directly or indirectly, into the city sewer system. The inclusion of the term "indirectly" in the ordinance does not render it constitutionally defective. In addition, we find no evidence in the record that leads us to conclude that the ordinances are not being enforced uniformly and fairly by the City of Atlanta.

As noted above, the sewer service ordinance is directed to the person or company whose waste is being discharged into the sewer system of Atlanta. The manner of discharge is only incidental and this is clearly shown by the basis of the charge required under the ordinance. The charge is based upon the amount of water used upon the premises of the sewer user. Water purchased by Cagle's is used in its processing of chickens. The waste water is then used to convey offal to Allied Foods. Allied removes the offal it purchases from Cagle's and the waste water flows on into the city sewer system. The diversion of Cagle's waste water through Allied for removal of offal does not alter the fact that it remains Cagle's waste water which is being discharged into the city sewer system. A different result would obtain if the evidence established that Allied was buying Cagle's

waste water and not just the right to remove offal from it. No such evidence appears in the present record. Additionally, it is significant the evidence does not establish that Allied uses the waste water to its benefit but merely removes the offal from it. If Allied had used Cagle's waste water as part of its process and manufacture, rather than merely passing it on to the city sewer system after offal removal, it could become the property of Allied Foods and in such circumstances, Cagle's would have no sewer discharge liability at all. Thus, it would be an advantage to Cagle's, rather than a detriment, for Allied foods to use and change the waste water in such a way that it authorized the imposition of an industrial waste surcharge. The present record before us suggests a contrary result as the evidence discloses that Allied has actually improved the quality of the discharge into the sewer system. We conclude that the trial court's rulings were correct.

The remaining enumeration of error, relating to the alleged default of Allied Foods, Inc. following its intervention allowed by the trial court upon consent of the parties, is without merit. The record reveals that the trial court's order required Allied to file defensive pleadings on or before October 30, 1972. The answer filed by Allied Foods, Inc., in connection with its motion to intervene, on July 14, 1972, was sufficient and it was unnecessary under Georgia practice to refile the same answer independently of the motion.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 11, 1973 — DECIDED NOVEMBER 8, 1973 — REHEARING DENIED NOVEMBER 29, 1973.

*Swift, Currie, McGhee & Hiers, W. Wray Eckl, Glover McGhee, Warner S. Currie,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Gary N. Ackerman, John Marshall, Henry L. Bowden, Charles Lokey,* for appellees.